# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | CASE NO. 4:13CR45 |
| v. | § | |
| | § | |
| MICHAEL WARREN COX (1) | § | |

## AMENDED[1] REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE DENYING DEFENDANT'S MOTION TO SUPPRESS

This matter having been referred by the Honorable Marcia A. Crone, the Court has considered Defendant Michael Warren Cox, Jr.'s Motion to Suppress Illegally Seized Evidence (Dkt. 38). After considering the evidence presented and the arguments of counsel at the June 25, 2014 hearing, the Court finds that the motion should be DENIED.

Defendant has asked the Court to suppress the seizure of a 9 mm caliber semi-automatic pistol from a car he was allegedly driving on January 1, 2013. Defendant argues that the car was searched without a warrant and the seizure was not permissible under the automobile exception for a warrant. The Government responds that Defendant lacks standing to bring the motion because he denied any ownership or possessory interest in the car at the time of his arrest. The Government further argues that, even if Defendant is found to have standing, the search of the vehicle and its

---

[1] This amended report is entered to correct several typographical errors identified in the report issued on June 26, 2014, which is ordered withdrawn. The Court's analysis remains unchanged.

1

contents were justified under probable cause, the automobile exception to the exclusionary rule, search incident to arrest and the plain view exception.

**EVIDENCE PRESENTED**

At the hearing, Officer Issac Bates with the Denison Police Department testified that, on December 31, 2012, he responded to a call regarding a shooting at a residence in Denison, Texas. Upon arrival, Bates was advised that the shooter had left the scene but was given a description of the suspect and his vehicle. One of the witnesses provided Defendant's name as the purported shooter and said he was her boyfriend. Another witness described the shooter's vehicle as a dark colored sedan with a cloth top. Officers were told that Defendant had been in the dark sedan shortly before the shooting at a gas station where he had prevented his girlfriend and her friend from exiting. Officers found approximately 11 shell casings from a 9 mm handgun outside the residence.

According to Bates, approximately four hours after the initial call and shortly after midnight on New Year's Day, he responded to another call, advising that the vehicle matching Defendant's description was spotted at the El Rio Disco nightclub. According to Bates, when he and another officer, Officer LaRoche, were dispatched to the club, they saw a car matching the description in the parking lot and waited for backup at the night club. Bates then used a flashlight to look in the car for any individuals. Bates testified that no person was there but could see part of a handgun in plain view behind the passenger seat. According to Bates, he could not tell whether it was 9 mm or not but could see that it was a handgun. Bates testified that he did not enter the vehicle at that time.

2

Before entering the club, officers ran the license plate of the vehicle and discovered that the vehicle was registered to Mary Cox, an individual with the same last name as the suspect, and Bates assumed they were related. Bates testified that no attempt was made to contact Mary Cox at that time. Mary Cox later informed Bates that Michael Cox had permission to drive the car.

The security officer in the club described the driver of the car as an individual matching the description of the Defendant, who was then located inside the club and arrested. When Defendant was taken outside of the club, Officer Bates questioned him about the car. At the time of his arrest, Defendant stated he didn't know who the car belonged to, claimed no ownership to the vehicle and disclaimed ownership of any items in the vehicle. Bates testified that the keys to the car were in Defendant's hands when he was arrested.

The Government offered a dashcam video recording of Defendant stating that the car was not his. In the video, the door of the car is already ajar. Defendant argues that the open door indicates that police had already accessed the vehicle prior to his disclaimer of interest in it. Officer Bates testified that the dashcam recording did not capture the entire conversation with Defendant once he was removed from the club. Officer Bates further testified that the sound of the tow truck in the background indicates that some time had passed between the time Defendant was removed from the club and the time the recording started. Officer Bates believed the dashcam video malfunctioned.

Officer Bates testified that, when the handgun was retrieved, it appeared to have been recently fired based on the smell of fresh gunpowder. Bates further testified that the gun's ammunition was the same kind as the shell casings found at the scene of the shooting.

## STANDING

The Court briefly addresses the Government's argument that Defendant lacks standing to challenge the seizure of the weapon. The Government argues that Defendant's recorded statements denying knowledge of who owned the car constituted an abandonment of any claim to privacy in the car or its contents.

In determining whether a defendant has a reasonable expectation of privacy sufficient to contest the validity of a search, we inquire "(1) whether the defendant is able to establish an actual, subjective expectation of privacy with respect to the place being searched or items being seized, and (2) whether that expectation of privacy is one which society would recognize as reasonable." *U.S. v. Finley*, 477 F.3d 250, 258 (5th Cir. 2007).

The Government argues that Defendant repeatedly denied any ownership or possession of the vehicle when asked by Officer Bates, and the Court agrees that the dashcam recording contains such statements by Defendant. The recording, however, also indicates that Defendant was evasive and changed his story as to his connection to the vehicle. His lack of candor is objectively clear. Morever, prior to speaking to Defendant, officers knew the car was registered to Mary Cox, Defendant's relative, and, although it was after the arrest, Mary Cox stated that Defendant had her permission to use the car. Objectively speaking, the Court finds that neither the officers at the scene nor Defendant himself believed that Defendant was voluntarily abandoning an interest in the car. *See U.S. v. Alvarez*, 6 F.3d 287, 289 -290 (5th Cir. 1993).

The Court notes that the Government's argument as to standing forced Defendant in an uncomfortable position of demonstrating the car and its contents were within his custody and control on the night of his arrest and of arguing that his statements to law enforcement at the time of his arrest were not truthful. Nonetheless, the Court finds that even liars and those who endeavor to deceive law enforcement in cases such as these have standing to challenge the search and seizure when there is a claimed property interest.

The Court will not recommend that the motion to suppress be denied based on a lack of standing.

## SUPPRESSION ANALYSIS

Even finding Defendant has standing, the Court finds there are no grounds for suppression of the firearm. Although the Fourth Amendment generally prohibits warrantless seizures, the "plain view" exception allows police to seize items where: (1) the police lawfully entered the area where the item was located; (2) the item was in plain view; (3) the incriminating nature of the item was "immediately apparent;" and (4) the police had a lawful right of access to the item. *United States v. Rodriguez*, 601 F.3d 402, 407 (5th Cir. 2010) (citing *Horton v. California*, 496 U.S. 128, 136–37, 110 S. Ct. 2301, 110 L. Ed.2d 112 (1990)). The incriminating nature of an item is "immediately apparent" if the officers have "probable cause" to believe that the item is either evidence of a crime or contraband. Probable cause does not require certainty. *Id.* at 407 (quoting *United States v. Waldrop*, 404 F.3d 365, 369 (5th Cir. 2005)).

In this case, Officer Bates and the other Denison P.D. officers lawfully entered the night club parking lot where the car was located. Bates testified that he shined a light into the car to see if Defendant – a suspect in a shooting less than five hours earlier – was inside. The Court notes that Bates and Officer LaRoche waited for backup before approaching the car. The Court finds that this undisputed fact corroborates Bates' testimony that a person could be inside and that the car was not approached merely to see what items might be inside.[2] In any event, upon looking in the car for a shooting suspect, Bates saw a gun in plain view on the back floorboard. Its incriminating nature was immediately apparent as it was a firearm. It was not concealed and, as such, was in violation of state law. Further, it was a firearm alleged to have been fired from a vehicle matching the description of the car in which it was found; therefore, the officers had a lawful right of access.

The Court finds that the plain view exception applies. *U.S. v. De Jesus-Batres*, 410 F.3d 154 (5th Cir. 2005) (plain view exception to warrant requirement permitted seizure of gun found in open view in the bed of pickup truck parked in garage given allegations that smuggled aliens had been held against their will for money, and officers entered garage because they did not know whether additional suspects or aliens were hiding there, although officers were not clear as to whether alien had told them that his captors were armed); *U.S. v. Guidry,* 2013 WL 5427973, 4 (W.D. La. 2013) (denying suppression where gun was seen in plain view by officer who was checking the car to make sure there were no other occupants).

---

[2]The Court discusses in more detail below the grounds for probable cause for such a belief.

The Court notes that there is some dispute as to when the officers seized the gun and whether it was before or after Defendant was taken out of the club. The testimony indicates the keys to the vehicle were in Defendant's hands. If the car was locked, the keys were needed to access the gun and thus were taken after Defendant's arrest. If the gun was retrieved prior to Defendant's removal from the club and the car was unlocked – as Defendant seems to argue – the unconcealed (and apparently loaded) weapon was visible in a parking lot accessible to the public at a night club on New Year's Day. The Court questions how this could affect any expectation of privacy. *See U.S. v. Holmes*, 521 F.2d 859, 864 -865 (5th Cir. 1975) ("When a person parks his car on a public way, he does not thereby give up all expectations of privacy in his vehicle. There is a right to be secure, even in public. Certainly, the driver may not complain if police observe objects in plain view of the car."). More importantly, the retrieval of the firearm by law enforcement was certainly made in good faith as a matter of public safety. *See, e.g., U.S. v. Rodriguez*, 601 F.3d 402, 408 (5th Cir. 2010) ("Common sense dictates that a firearm that could be accessed by someone at the scene and used against officers or others should be unloaded, and at least temporarily, kept in a safe place."). In any event, the Court finds any dispute as to when the gun was removed of little import to the analysis here as the gun was in plain view and could thus be immediately seized upon identification.

The Court further finds that the automobile exception also applies here. "[A]n automobile may be searched without a warrant where there are both exigent circumstances and probable cause to believe that the car contains items that law enforcement officers are entitled to seize." *U.S. v. Cisneros-Mireles*, 739 F.2d 1000, 1002 (5th Cir. 1984). A court must look to the totality of the

circumstances to determine whether there was probable cause that a vehicle contained contraband. *U.S. v. Fields*, 456 F.3d 519, 523 (5th Cir. 2006) (citing *Illinois v. Gates,* 462 U.S. 213, 230-31, 103 S. Ct. 2317, 76 L. Ed.2d 527 (1983)).

In this case, the Court finds that the testimony clearly demonstrates that there was probable cause that the gun seen by officers in the car matching the description of Defendant's had been used in a shooting several hours earlier.[3] Witnesses who knew Defendant named him as the suspected shooter and described his vehicle as a dark sedan with a rag top. Two of the witnesses further told officers that, prior to the shooting, Defendant was driving the dark sedan and forcibly blocked them from exiting a gas station, thereby placing into context the heightened tensions giving rise to any alleged shooting. Numerous shell casings were found in the street in front of the house, corroborating the witnesses' claims that the house had been shot at from inside or near the vehicle. It is further undisputed that police received a second call notifying them that the vehicle involved in the shooting was at the nightclub and that officers observed a car matching the description parked there. Given the totality of the circumstances, the Court finds there was probable cause to believe that the car parked in the lot was the same car involved in the deadly conduct hours before and that it contained either persons or contraband associated with that conduct.

As to Defendant's argument that the car was searched before he was arrested, as noted above, this claim is not supported by the evidence before the Court. Moreover, regardless of whether the

---

[3]As noted above, there was also probable cause that the manner in which the firearm was kept was a violation of the state's laws on concealed weapons.

gun was retrieved from an unlocked car before Defendant's arrest or with the keys taken from Defendant at the time of his arrest, the Court finds that the totality of the circumstances support probable cause upon the discovery of the car and weapon in plain view. "Probable cause determinations are not to be made on the basis of factors considered in isolation, but rather on the totality of the circumstances." *U.S. v. Banuelos-Romero*, 597 F.3d 763, 767 -768 (5th Cir. 2010) (internal citations and quotations omitted). Probable cause is clear here.

The Court also finds that circumstances were sufficiently exigent to justify the seizure and search. A handgun was seen in a parked car in the middle of the night at a nightclub on New Year's Day. Although parked, the car was in a lot open to the public and the Court finds exigent circumstances remained. The facts presented to the Court are clearly distinguishable from those in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed.2d 564 (1971), relied upon by Defendant. Specifically, unlike *Coolidge* where (1) the police had known for some time the probable role of the car in the crime; (2) there was no indication that the defendant intended to flee; (3) the defendant had already had ample opportunity to destroy any evidence in the car; (4) there was no suggestion that the car was being used for an illegal purpose on the night in question; (5) the car was regularly parked in the driveway of the defendant; and (6) the objects of the search were neither stolen, dangerous, nor contraband; *in this case*, (1) police officers had only learned of the shooting several hours before and this was the first sighting of the car allegedly involved; (2) Defendant had allegedly fled the scene of the shooting and, at the time the car was approached, his whereabouts in relation to the club, car or parking lot were unknown; (3) there was probable cause to believe the car

and the weapon in plain view had been used in the shooting and thus had been used for an unlawful purpose that evening; (4) there was no reason to believe Defendant, Defendant's car, or the gun would remain at the nightclub if officers left to obtain a warrant; and (5) the object seen in plain view of officers and seized was in fact contraband. *See id.; U.S. v. Cisneros-Mireles*, 739 F.2d 1000, 1004 (5th Cir. 1984). The fact that the car was parked when it was searched has little significance in the showing of exigent circumstances. "That the ... door was locked, that several agents were present, and that the subject could have been immobilized pending the application for and the receipt of a search warrant does not dictate any different result... [as Defendant] had already published the presence of the [contraband] in the vehicle." *U.S. v. Gaultney*, 581 F.2d 1137, 1143 (5th Cir. 1978).[4]

For these reasons, Defendant Michael Warren Cox, Jr.'s Motion to Suppress Illegally Seized Evidence (Dkt. 38) should be DENIED.[5] Defendant had been seen in the vehicle just hours before, Defendant was alleged to have used a firearm from that vehicle just hours before, and the firearm

---

[4] "There is no doubt that if the agents had permitted Gilmere to retrieve the cocaine from the truck and then arrested him while in the act of completing the transaction with Williams, the cocaine in the reddish box would have been readily admissible in evidence. However, had they permitted him to enter the truck, he could have spotted the other agents and suspected that his project had gone sour. He could then have fled the scene, forcing the officers to give chase or to permit him to escape, along with the contraband in the vehicle. Had the officers waited until a chase actually took place the subject might nevertheless have escaped, as often happens. Certainly, if a chase had ended successfully the officers would have had the right to arrest him, with an immediate search of the vehicle, *Carroll v. United States*, supra. Under the facts of this case, the officers were under no constitutionally imposed compulsion to wait any longer. Probable cause and exigent circumstances had met; it remained only for the officers to act."

[5] Because the Court finds that both the automobile and plain view doctrines apply, it declines to address whether it was a lawful search incident to arrest.

was inside the vehicle in plain view. There are no grounds for suppression.

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C.A. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

At the hearing, the parties agreed to shorten the time period to object to the finding and conclusions contained in this report. Given the current trial setting, any objections shall be filed no later than **July 2, 2014.**

**SIGNED this 27th day of June, 2014.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE